FERNANDO SIERRA BERDECIA, SECRETARY OF LABOR, ETC., Petitioner, v. SUPERIOR COURT OF PUERTO RICO, CAGUAS PART, JESÚS A. GONZÁLEZ, JUDGE, Respondent.

No. 2132. Argued April 4, 1954.—Decided May 11, 1955.

Joaquín Gallart Mendía and Manuel Janer Mendía for the Department of Labor, and in turn for petitioner. Jorge M. Morales and Ramón L. Nevares for intervener, defendant in the main action.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Domingo Matos Torres, represented by the Secretary of Labor, filed a suit in the District Court against José E. Morales for unpaid wages. After a trial on the merits, the District Court entered a judgment in favor of the plaintiff for $542 plus an equal amount as a penalty. On appeal, the Superior Court reversed the judgment of the District Court. We granted certiorari to review the judgment of the Superior Court.

The only substantial question presented is whether the work of the plaintiff during two periods of time in 1952–53 was covered by Mandatory Decree No. 1 or No. 12 of the Minimum Wage Board.

During these periods, according to the findings of fact of the District Court, the plaintiff drove a pick-up truck in which he carried and delivered various agricultural materials which the defendant, engaged in the tobacco-stripping business, furnished as a form of crop loan to farmers who supplied the defendant with tobacco for the latter's tobacco-stripping business.[1] The defendant contends that this work of the plaintiff was covered by the definition of the Raw Tobacco Industry found in Mandatory Decree No. 1, reading as follows:

"The preparation of raw tobacco, including but without being limited to, receiving and weighing, storing, classifying or selecting, fermenting, stripping, boxing or packing, warehousing, drying *or any other operation related to the preparation of raw*

---

[1] There is no basis in the record for the statement in the "order" of the Superior Court that the plaintiff did this type of work *occasionally.* The summary of the testimony supports the findings of fact of the District Court in this respect. In addition, we see no point in discussing the question of whether the agricultural materials furnished by the defendant to the farmers were delivered to "deposits" of the defendant rather than directly to the farmers.

*tobacco* before being used in the manufacture of cigars, cigarettes or other products derived from tobacco." (Italics ours).

The defendant then argues that the work of the plaintiff being covered by the above-quoted italicized portion of the definition of the Raw Tobacco Industry, Mandatory Decree No. 1 rather than No. 12 applies to the plaintiff in view of the provision in par. A of Section I of Decree No. 12 that it does not apply to transportation ". . . by any employer in vehicles belonging to him or operated by him for purposes of or in relation to his industry, business or occupation if another mandatory decree of this Board is applicable thereto."

The crucial question before us therefore is whether the plaintiff, in transporting agricultural materials furnished to farmers by the defendant in the form of a crop loan, was engaged in an operation related to the preparation of raw tobacco, as defined in Mandatory Decree No. 1. We think the answer is obvious. Undoubtedly, making such a crop loan benefited the defendant's business of tobacco-stripping since it assured him of a supply of tobacco therefor. But it had nothing to do with the preparation of raw tobacco as such. It was part—or perhaps preliminary to—an agricultural process, which is not covered by the definition in Decree No. 1. It follows that the work of the plaintiff was not exempted from the transportation decree under the terms of par. A of Section I thereof and that Mandatory Decree No. 12 rather than No. 1 applied to his work during the periods of time in question. See *Sierra, Commissioner* v. *Morales,* 72 P.R.R. 647; *Commissioner of Labor* v. *Llamas,* 73 P.R.R. 847, 855. *Sierra, Sec. of Labor* v. *Bird, ante,* p. 161, involved a somewhat different problem and does not apply here.

The judgment of the Superior Court will be reversed and a new judgment entered in favor of the plaintiff for $542 plus an equal amount as a penalty.